**UNITED STATES of America,**
**Appellee,**

v.

**Shawn K. HASELEY, Defendant,**

**Mark S. Meloon, Defendant–Appellant.**

**Docket No. 02–1249.**

United States Court of Appeals,
Second Circuit.

June 16, 2003.

John J. Lavin, Lavin & Kleiman, P.C., Buffalo, N.Y., for Appellant.

Michael A. Battle, United States Attorney for the Western District of New York, Richard Power Maigret, Assistant United States Attorney, Buffalo, N.Y., for Appellee.

Present: SACK, SOTOMAYOR, Circuit Judges, and BRIEANT, District Judge.[1]

**SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

Appellant–Defendant Mark S. Meloon appeals from a judgment entered April 10, 2002, pursuant to his plea of guilty to 18 U.S.C. §§ 922(g)(1), 924(a)(2), for knowing possession of a firearm by someone "who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year." The weapon Meloon pled guilty to possessing was a

---

1. The Honorable Charles L. Brieant, of the United States District Court for the Southern District of New York, sitting by designation.

Norinco Model SKS, 7.62 × 39mm, which is described in 18 U.S.C. § 921(a)(30)(A)(i). Over the defendant's objection, the district court adopted the recommendation of the Pre–Sentence Report ("PSR") to apply a three-level upward enhancement under U.S.S.G. § 3A1.2(b), the so-called official-victim enhancement. On April 4, 2002, the defendant received a sentence of 63 months' imprisonment, three years' supervised release, and a $100 special assessment.

*Factual Background*

On June 8, 2001, the Niagara County Sheriff's Office received a 911 call from the defendant's daughter or wife. The call reported that the defendant was creating a domestic disturbance in their home and firing a rifle into the air. The defendant was well-known to the Niagara County Sheriff's Department because of his prior felony offenses and a prior arrest during which he discharged a firearm at a Niagara County deputy sheriff.

When the deputies arrived at the defendant's residence, the defendant's wife said that the defendant had been demanding that she give him money to buy crack. The defendant's wife and daughter both fled the residence shortly thereafter.

One or more deputy sheriffs saw the defendant leave the house holding a rifle barrel. After running into the house and returning with a hammer, the defendant struck one end of the rifle barrel with the hammer, thereby discharging a cartridge. The defendant similarly fired two more rounds before running behind the house.

Moments later, the defendant returned from behind the house and walked across the yard with his hands over his head. The deputies instructed him to lie down on the ground, but he refused to do so. Deputy Sheriff Patrick Needle approached the defendant, but when Deputy Needle got within eight feet of him, the defendant reached behind his back, pulled the concealed gun barrel out of his pants, swung the barrel, and struck Deputy Needle on the head. Deputy Needle was later treated at a hospital for a contusion. The defendant testified at sentencing that striking Deputy Needle was the accidental result of the defendant's attempt to take the gun barrel out of his pants and throw it on the ground before he was tackled. The defendant's explanation for why he had the rifle barrel in his pants in the first place was that he "did not want the police officers going in the house and finding the SKS [the semiautomatic weapon that is the subject of this conviction]." (Letter from Mark S. Meloon to the Hon. William M. Skretny, Feb. 28, 2002.)

The defendant continued to resist arrest. When he was eventually subdued, he was arrested on state charges for first-degree menacing, N.Y. Penal L. § 120.13, second-degree assault, for assaulting a police officer with intent to prevent him or her from doing a lawful duty, N.Y. Penal L. § 120.05(3), and second-degree criminal possession of a weapon, N.Y. Penal L. § 265.03. The defendant pled guilty in state court to one count of reckless endangerment, N.Y. Penal L. § 120.25.

After the defendant was arrested, police officers obtained permission from the defendant's wife to search their home. The purpose of this search was to discover the rifle that the defendant had reportedly been firing into the air before their arrival. The officers found the semiautomatic assault rifle that is the subject of count one of this indictment—the one count to which the defendant pled guilty—in a heating duct in the kitchen. They also found ammunition for this weapon. These items formed the basis for the federal conviction that is the subject of this indictment.

## Standard of Review

At sentencing, disputed facts need only be proved by a preponderance of the evidence, and we review the district court's factual findings for clear error. *United States v. Ashley,* 141 F.3d 63, 69 (2d Cir.), *cert. denied,* 525 U.S. 888, 119 S.Ct. 203, 142 L.Ed.2d 166 (1998). In the context of the official-victim enhancement, we have said that "whether the defendant knew his victims were officials and what actions he took" are questions of fact. *Id.*

We give "due deference" to the district court's application of the Guidelines to the facts. *Id.* (quoting 18 U.S.C. § 3742(e)). "The determination as to whether the defendant's conduct posed a 'substantial risk of serious bodily injury' within the meaning of § 3A1.2(b) requires an analysis of the risks to the officers in light of the court's findings as to the nature of the defendant's conduct and involves an application of the Guidelines to the facts." *Id.*

## Discussion

Section 3A1.2(b) of the Sentencing Guidelines provides for a three-level enhancement if, "during the course of the offense or immediate flight therefrom, the defendant ..., knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(b) (2001).

■ The defendant challenges the application of the enhancement under U.S.S.G. § 3A1.2(b) on three grounds: (1) that there is insufficient evidence that he intended to harm the officer that he hit over the head with a rifle barrel; (2) that his assault of the officer did not occur "during the course of the offense or immediate flight therefrom" because the weapon at issue in the offense, a semiautomatic weapon, was hidden in a heating duct in his

house at the time he assaulted the officer; and (3) that the enhancement is "impermissible double-counting" of the offensive conduct because he already pled guilty in state court to assaulting an officer. These arguments are without merit.

**(1) Sufficiency of the Evidence.** Based on the evidence in the record, we conclude that the district court did not commit clear error in finding, by a preponderance of the evidence, that the defendant intended to harm Deputy Needle when he struck him over the head with the rifle barrel. The fact that the defendant pled guilty in state court to reckless endangerment does not show that he was *only* reckless.

■ **(2) The "Course of the Offense or Immediate Flight Therefrom."** The district court did not err in concluding that the defendant's assault on Deputy Needle occurred during the "course of" or in the "immediate flight" from the offense of possessing the Norinco assault rifle, which forms the basis for this conviction. The police came to the premises to investigate reports that the defendant was firing a weapon into the air. According to the defendant's plea agreement, the weapon that prompted the police's arrival was the weapon of conviction: "On or about June 8, 2001, ... the defendant ... did unlawfully and knowingly possess ... a loaded ... SKS.... At about this time and place the defendant was discharging the firearm into the air." Moreover, the defendant stated in a letter to Judge Skretny that he put the rifle barrel down his pants "because [he] did not want the police officers going in the house and finding the SKS [for which he is] being sentenced." We therefore conclude that the defendant's assault on Deputy Needle occurred during the "course of" or in the "immediate flight" from the offense of conviction.

**(3) Double Jeopardy.** Finally, the application of the enhancement does not violate the Double Jeopardy Clause because successive prosecutions by state and federal governments may impose punishment for the same conduct. *See United States v. All Assets of G.P.S. Auto. Corp.,* 66 F.3d 483, 493 (2d Cir.1995) (discussing the impact of the "dual sovereignty" doctrine on double jeopardy).

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.